UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

TERRY L. LITTLE,                              )        Case No. 1:12CV145
                                             )
              Petitioner,                    )        JUDGE SARA LIOI
                                             )
       v.                                    )        Magistrate Judge George J. Limbert
                                             )
TIMOTHY BRUNSMAN,                            )        **Report and Recommendation**
                                             )        **of Magistrate Judge**
              Respondent.                    )
                                             )


On January 11, 2012[1], Petitioner Terry L. Little ("Petitioner"), acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred during his trial in the Lorain County, Ohio Court of Common Pleas, where he was convicted of one count of aggravated murder in violation of Ohio Revised Code ("ORC") §2903.01(A), with a firearm specification pursuant to ORC §2941.145, one count of felonious assault in violation of ORC §2903.11(A)(2), with a firearm specification pursuant to ORC §2941.145, and one count of tampering with evidence in violation of ORC 2921.12(A)(1), with firearm specifications pursuant to ORC §2941.145, one count of having a weapon while under disability in violation of ORC §2923.13(A)(3), one count of murder in violation of ORC §2903.02(A), with a firearm specification pursuant to ORC §2941.145, and one count of murder in violation of ORC §2903.02(B), with a firearm specification pursuant to ORC . ECF Dkt. #8-1 at 20-34. On October 29, 2012, with leave of the Court, Respondent Timothy Brunsman, Warden of Lebanon Correctional Institution, where Petitioner is incarcerated, filed an answer/return of writ. ECF Dkt. #8. Petitioner filed a traverse on December 5, 2012. ECF Dkt. #10. For the

---

[1]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its

entirety with prejudice:

# I.    SYNOPSIS OF THE FACTS

The Ninth District Court of Appeals of Ohio set forth the relevant facts on direct appeal.

ECF Dkt. #8-1 at 113-114.  These binding factual findings "shall be presumed to be correct," and

Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert.*

*denied*, 119 S.Ct. 2403 (1999):

> {¶ 2} On the evening of July 30, 2007, Little entered a McDonald's restaurant
> on Oberlin Road and shot the victim in this case, Lewis Turner, in the back
> with a .380 caliber semiautomatic pistol. Little then fled McDonald's on foot
> and crossed over to the adjacent parking lot.  Turner followed and a fray
> ensued. Little ultimately shot Turner twice with a .22 caliber semi-automatic
> pistol. Thereafter, Little took Turner's cell phone and the two firearms and ran.
> He discarded his hooded sweatshirt in a nearby dumpster and the firearms in
> the bushes of a nearby residence. Turner died in the parking lot as a result of
> his gunshot wounds.
>
> {¶ 3} While patrolling the area shortly after the shooting, Officer Orlando
> Perez saw an individual who matched the description one witness gave of a
> man who had fled the scene. Officer Perez identified the man as Little and
> arrested him as the result of an active warrant. In searching Little incident to
> the arrest, Officer Perez discovered a bag of crack cocaine. Other officers later
> discovered the sweatshirt and firearms that Little discarded after fleeing the
> scene. Little ultimately admitted that he shot Turner in McDonald's because
> Turner had assaulted him a year earlier in relation to a drug transaction
> between the two of them.

*State v. Little*, 2011 WL 597994 at *1.

# II.    PROCEDURAL HISTORY

## A.    State Trial Court

In the July term of 2007, the Lorain County, Ohio Grand Jury indicted Petitioner for:

one count of aggravated murder in violation of ORC §2903.01(A), and a firearm
specifications pursuant to ORC §2945.145 (Count One);

one count of felonious assault in violation of ORC §2903.11(A)(2), with a firearm
specification pursuant to ORC §2945.145 (Count Two);

one count of tampering with evidence in violation of ORC §2921.12, with two
firearm specifications pursuant to ORC §2945.145 (Count Three);

one count of having a weapon while under disability in violation of ORC
§2923.13(A)(3)(Count Four);

one count of receiving stolen property in violation of ORC §2913.51(A), with a firearm specification pursuant to ORC §2945.145(Count Five);

one count of murder in violation of ORC §2903.02(A), with a firearm specification pursuant to ORC §2945.145 (Count Six);

one count of murder in violation of ORC §2903.02(B), with a firearm specification pursuant to ORC §2945.145 (Count Seven);

ECF Dkt. #8-1 at 5-7[2].  By way of a supplemental indictment in the April Term of 2008, the Lorain County, Ohio Grand Jury indicted Petitioner for one count of murder in violation of ORC §2903.02(B), with a firearm specification pursuant to ORC §2945.145 (Count Eight).  *Id.* at 17-18.

Petitioner initially pleaded not guilty by reason of insanity,  *Id.* at 9-10, however the trial court conducted a competency hearing and determined that Petitioner was sane and competent for trial.  *Id.* at 11-16.  Petitioner, while represented by counsel[3], filed a pro se motion to suppress, a motion to substitute photo for physical evidence, and a motion for disclosure of evidence favorable to the defendant.  ECF Dkt. #8-3 at 3.  At a hearing held on August 5, 2009, the trial court refused to consider the motions due to the fact that Petitioner was represented by counsel.  *Id.*  at 4.

The matter proceeded to a jury trial on December 7, 2009.  The State dismissed Count Seven[4] at the beginning of the trial and proceeded on the remaining Counts one through Six and Eight. Petitioner was convicted of aggravated murder, felonious assault, tampering with evidence, having weapons while under disability, two counts of murder, and multiple firearm specifications.  Prior to sentencing, Petitioner filed two *pro se* requests for new trial.  ECF Dkt. #8-1 at 35-45.  On December 23, 2009, the trial court denied the motions and proceeded to sentencing.  *Id.* at 46. Petitioner was sentenced to thirty years imprisonment for Count One (which was merged with Counts Six and Eight for the purpose of sentencing), seven years imprisonment for Count Two, four

---

[2]References to the record in this case refer to the ECF docket number of the cited document and the page number assigned to cited pleading by the ECF system, which can be found in the search box at the top of the page on the ECF toolbar.

[3]Petitioner dismissed his first court-appointed counsel.  At the time he filed his pro se motions, he was represented by a second court-appointed counsel.

[4]The prosecutor explained that the supplemental indictment charging murder in Count Eight was intended to supplant the murder charge in Count Seven. ECF Dkt. #8-4 at 8.

years imprisonment for Count Three, four years imprisonment for Count Four, all sentences to run concurrently, and three years on the firearm specifications, which were merged for the purpose of sentencing, to be served consecutively, for an aggregate sentence of thirty-three years to life in prison. *Id.* at 47-50.  On January 6, 2010, a hearing was held pursuant to *State v. Singleton*, 2009 Ohio 6434, and the journal entry of conviction and sentence was amended, *nunc pro tunc*, to advise Petitioner of the mandatory requirements of post release control. *Id.* at 51.

###### B.   **Direct Appeal**

On January 25, 2010, Petitioner, through counsel, filed a notice of appeal to the Ohio Court of Appeals for the Ninth District. *Id.* at 52.  Petitioner raised the following assignments of error in his appellate brief:

> 1. THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON SELF DEFENSE.
>
> 2. THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSES OF VOLUNTARY MANSLAUGHTER AND INVOLUNTARY MANSLAUGHTER.
>
> 3. THE VERDICTS ARE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE THEY VIOLATE THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

*Id.* at 59.  On February 22, 2011, the Court of Appeals issued a decision and journal entry overruling each assignment of error and affirming the judgment of the trial court. *Id.* at 114-128.

###### C.   **Supreme Court of Ohio**

On April 12, 2011, forty-nine days after the Court of Appeals filed its decision, Petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal in the Ohio Supreme Court stating that his previous appeal documents were returned. *Id.* at 128, 131-152.  The Court granted Petitioner leave to appeal and ordered that Petitioner file his memorandum in support of jurisdiction within thirty days. *Id.* at 153. On June 13, 2011, Petitioner filed a motion to hold the case in abeyance because his Rule 26(B) application, discussed *infra,* was still pending in the Court of Appeals. *Id.* at 154. The motion was denied and Petitioner was ordered to file his memorandum

in support of jurisdiction no later than June 24, 2011. *Id.* at 181. Petitioner filed his brief on June 15, 2011 and presented the following propositions of law:

> 1. THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON SELF DEFENSE.
>
> 2. THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSES OF VOLUNTARY MANSLAUGHTER AND INVOLUNTARY MANSLAUGHTER.
>
> 3. THE VERDICTS ARE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE THEY VIOLATE THE FIFTH, SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
>
>> ASSIGNMENTS OF ERROR NOT PREVIOUSLY CONSIDERED, DUE TO THE INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL NOT RAISING THE SERIOUSNESS OF THESE ISSUES.
>
> 4. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FAILED TO RAISE TRIAL COURT COMMITTED PLAIN ERROR FOR THE IMPROPER INSTRUCTION GIVEN TO THE JURY DURING DELIBERATIONS.
>
> 5. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE PROSECUTOR MISCONDUCT.

*Id.* at 185.  On September 21, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *Id.* at 235.

> **D.**     **Petition to Vacate or Set Aside Judgment**

In the meantime, on July 29, 2010, Petitioner filed a petition to vacate or set aside the judgment of conviction based on ineffective assistance of trial counsel predicated upon his *pro se* motion filed during trial proceedings to dismiss his counsel.  *Id.* at 279.  On August 16, 2010, the Court issued a finding of fact and conclusion of law denying Petitioner's petition and finding that he failed to present operative facts to support his claim that his trial counsel was ineffective. *Id.* at 285-287.  Petitioner did not appeal the decision.

> **E.**     **Delayed Application for Reconsideration**

On October 28, 2010, Petitioner filed a pro se motion in the trial court for leave to file a delayed application for reconsideration "pursuant to S.Ct. Prac. R. II(2)(A) (4)(a)."  *Id.* at 288.  On November 2, 2010, the trial court interpreted the motion as a motion for reconsideration filed

pursuant to App. R. 26(A)(1)(a), and summarily denied the motion as improperly filed in the trial court. *Id.* at 293-294.

### F. **Application to Reopen**

On April 1, 2011, Petitioner filed a *pro se* application to reopen his direct appeal in the Ninth District pursuant to App. R. 26(B). *Id.* at 236. In his brief, Petitioner argued that he received ineffective assistance of direct appeal counsel when his counsel failed to argue the following three claims of error on appeal: (1) the trial court erred when it gave the jury erroneous jury instructions during deliberations, (2) the trial court erred by denying his motion for a new trial and (3) the trial court erred by denying his motion for new trial because of the way it answered the jury question during deliberations. On May 3, 2011, the Court of Appeals denied Petitioner's application. *Id.* at 255-256. Petitioner did not appeal the decision.

### G. **Delayed Applications for Reconsideration**

On January 23, 2012 and February 2, 2012, Petitioner filed two motions for leave to file a delayed application for reconsideration with the Ninth District. *Id.* at 257-276. Ohio App. R. 26(A)(1)(a) requires that an application for reconsideration be made "in writing no later than ten days after the clerk has both mailed to the parties the judgment or order in question and made a note on the docket of the mailing as required by App. R. 30(A)." On March 1, 2012, the Court ruled that both motions were untimely, as not filed within ten days of May 3, 2011, and they were stricken. *Id.* at 277.

### III. **28 U.S.C. § 2254 PETITION**

On January 20, 2012, Petitioner, acting *pro se*, filed the instant petition for a writ of habeas corpus. ECF Dkt. #1. Petitioner raises the following grounds for relief:

> GROUND ONE: IN THIS CASE, MR. LITTLE ESTABLISHED THE THREE ELEMENTS REQUIRED BY ROBBINS. THE EVIDENCE SHOWED THAT MR. LITTLE ENTERED THE RESTAURANT AND SHOT MR. TURNER ONE TIME IN THE SHOULDER. MR. LITTLE THEN FLED THE RESTAURANT. AT THAT POINT THE "AFFRAY" STARTED BY MR. LITTLE WAS OVER. MR. LITTLE COULD HAVE STAYED IN THE RESTAURANT AND ENGAGED MR. TURNER IN FURTHER BATTLE. BUT HE LEFT THE RESTAURANT, AND LEFT MR. TURNER INSIDE THE RESTAURANT WITH A NON-FATAL WOUND TO HIS SHOULDER. MR. TURNER LEFT THE RESTAURANT AND ATTACKED MR. LITTLE AS HE WAS GOING FOR HIS CAR. MR. LITTLE

TESTIFIED THAT WHEN HE EXITED, HE SAW TURNER WAS SIX FEET AWAY FROM HIM, HE PLEADED WITH MR. TURNER NOT TO HURT HIM. MR. TURNER ATTACKED MR. LITTLE BY GRABBING HIM AND PLACING HIM IN A HEADLOCK. THE GUN MR. LITTLE HAD FELL OUT OF HIS POCKET. AT THAT POINT, MR. LITTLE BEGAN TO FEAR FOR HIS LIFE BECAUSE HE WAS DEFENSELESS AGAINST A POSSIBLE TWO PEOPLE. MR. LITTLE TESTIFIED THAT HE SAW MR. TURNER PULL A GUN OUT OF HIS POCKET. LITTLE WAS ABLE TO KNOCK THE GUN OUT OF TURNER'S HAND. AS HE DID SO, MR. TURNER PICKED MR. LITTLE'S GUN UP AND TRIED FIRING AT MR. LITTLE, SIMULTANEOUSLY MR. LITTLE PICKED UP MR. TURNER'S GUN AND FIRED SIMULTANEOUSLY BUT FIRED TWICE IN SELF-DEFENSE. THE EVIDENCE ESTABLISHED TWO SEPARATE INCIDENTS. THE FIRST TOOK PLACE INSIDE THE RESTAURANT AND INVOLVED MR. LITTLE COMMITTING FELONIOUS ASSAULT ON MR. TURNER. MR. LITTLE CANNOT, AND DOES NOT, CLAIM SELF-DEFENSE AS TO THAT INCIDENT. IN THE PARKING LOT, MR. LITTLE WAS ATTACKED BY A MAN WIELDING A DEADLY WEAPON. MR. LITTLE WAS UNARMED AND COULD NOT RETREAT BECAUSE MR. TURNER HELD HIM IN A HEADLOCK WITH EXCRUCIATING FORCE. MR. LITTLE'S ACTIONS IN THE PARKING LOT WAS DONE NONETHELESS IN SELF-DEFENSE. AND BY THE TRIAL COURT REFUSING TO INSTRUCT THE JURY ON SELF-DEFENSE DEPRIVED LITTLE OF HIS LIFE AND LIBERTY BY SENTENCING HIM TO A LIFE SENTENCE ACCORDING TO THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

GROUND TWO: MR. LITTLE TESTIFIED THAT MR. TURNER VIOLENTLY ATTACKED HIM APPROXIMATELY ONE YEAR PRIOR TO THIS INCIDENT IN QUESTION. DETECTIVE TESTIFIED MR. TURNER WAS KNOWN FOR GOING AROUND THE CITY DUCT TAPING PEOPLE FOR MONEY. LITTLE BECAME A VICTIM OF TURNERS CRIME SPREE. MR. LITTLE TESTIFIED HE SHOT TURNER TO HARM HIM, "AND LET HIM FEEL WHAT I FELT FOR THE PAST YEAR." LITTLE'S TESTIMONY ESTABLISHED HE WAS SUBJECTIVELY UNDER THE INFLUENCE OF A SUDDEN FIT OF RAGE WHEN HE SAW MR. TURNER AT THE RESTAURANT, AFTER HARMING TURNER IN THE RESTAURANT MR. LITTLE HAD NO MORE INTENTIONS BUT TO LEAVE. TURNER ATTACKED LITTLE OUTSIDE THE RESTAURANT CREATING AN OFFENSE OF VIOLENCE THAT HE HIMSELF PROVOKED. LITTLE PRODUCED THIS EVIDENCE, THE STATE FAILED TO PRODUCE EVIDENCE DISPUTING THIS FACT. THE TRIAL COURT DENIED LITTLE'S EQUAL PROTECTION OF THE LAWS BY REFUSING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES OF VOLUNTARY MANSLAUGHTER AND INVOLUNTARY MANSLAUGHTER ACCORDING TO THE FOURTEENTH AMENDMENT SECTION 1 OF THE UNITED STATES CONSTITUTION.

GROUND THREE: THE VERDICTS ARE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE THEY VIOLATE THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO. THE FACT RAISED BY THE STATE DID NOT APPEAR PROBABLE, BECAUSE THE CONVICTION ON THE AGGRAVATED MURDER CHARGES AND THE OTHER TWO MURDER CHARGES RESTED ONLY ON A ERRONEOUS JURY INSTRUCTION GIVEN BY THE TRIAL JUDGE. THE ELEMENTS PRESENTED BY THE STATE WAS NOT SUPPORTED BY THERE (THEIR) WITNESSES

TESTIMONY. MAJORITY OF THE STATES WITNESSES TESTIMONY SUPPORTED THE LITTLE'S ARGUMENTS, OF A LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER AND INVOLUNTARY MANSLAUGHTER. THE MANAGER OF MCDONALD'S MRS. TRACI NELSON TESTIFIED THAT SHE SAW TWO PEOPLE THROWING PUNCHES WHICH SUPPORTS THIS ISSUE, THERE WAS FEAR INVOLVED IN THIS INCIDENT. THE TRIAL COURT COMMITTED PLAIN ERROR VIOLATING LITTLE'S CONSTITUTIONAL RIGHTS DEPRIVING HIM OF LIFE AND LIBERTY WITH THE MIS-CARRIAGE OF JUSTICE WITH THE CONVICTION OF THE MURDER CHARGES. ACCORDING TO THE 5TH 6TH AND 14TH AMENDMENTS.

GROUND FOUR: THE TRIAL COURT DEPRIVED LITTLE OF A FAIR TRIAL IN VIOLATION OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION DURING THE COURSE OF TRIAL, IN THE WAY THE JUDGE ANSWERED THE JURY'S QUESTION DURING DELIBERATION IT WAS DEFINITELY UNREASONABLE THE WAY HE SAID IT, AND THE WAY HE VIOLATED LITTLE'S DUE PROCESS RIGHT TO A FAIR TRIAL BY REDUCING THE INSTRUCTIONS TO HANDWRITING. DURING DELIBERATION THE JURY ASKED THE JUDGE A QUESTION ON A WRITTEN PIECE OF PAPER. THEY ASKED, "HOW DO WE DECIDE THE AGGRAVATED MURDER, AND THE MURDER CHARGES." THEN THE JUDGE ANSWERED BY WRITING ON A PIECE OF PAPER WHILE SENDING IT BACK TO THE JURY JUDGE: "YOU HAVE ALL THE EVIDENCE, YOU DECIDE." NOW THESE FACTS THAT SUPPORT MY ISSUE ARE TRUE AND I WILL ALSO LEAVE THIS THOUGHT THE CHOICE OF WORDS THE JUDGE USED WAS UNREASONABLE. THE JURY COULD HAVE TAKEN THE ATTITUDE IN HIS ANSWER AS "IT ISN'T HARD TO FIGURE OUT YOU DECIDE." EVEN IF THAT DOESN'T RAISE ENOUGH FOR A DUE PROCESS VIOLATION TO A FAIR TRIAL, BY REDUCING THE INSTRUCTIONS TO HANDWRITING DOES VIOLATE LITTLE'S RIGHT TO A FAIR TRIAL.

GROUND FIVE: APPELLATE COUNSEL FAILED TO RAISE PROSECUTOR MISCONDUCT, THIS ISSUE WAS RAISED AS INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL. IT WAS GREAT REASON TO RAISE THIS ISSUE. LITTLE FILED A MOTION FOR DISCLOSURE OF EVIDENCE FAVORABLE TO THE DEFENDANT WHICH WAS FILED JUNE 18th 2009. THIS MOTION WAS EITHER DENIED OR NEVER HEARD. THIS EVIDENCE WOULD OF HELPED LITTLE'S DEFENSE AND HIS APPELLATE APPEAL ALSO, SHOWING THIS WAS NO AGGRAVATED MURDER OR NO MURDER, BUT IF ANYTHING A LESSER INCLUDED OFFENSE OF THESE CHARGES. THE PROSECUTOR PRESENTED EVIDENCE OF A MCDONALD'S THAT SAT INSIDE LITTLE'S CAR THIS EVIDENCE WAS NEVER GIVEN IN A DISCOVERY PACKET, THIS EVIDENCE SHOULD OF FOLLOWED A RECEIPT PROVING THE TIME FRAME ELIMINATING AGGRAVATED MURDER AND MURDER. THIS ALSO VIOLATES LITTLE'S RIGHT TO A FAIR TRIAL ACCORDING TO THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.

ECF Dkt. #1.

## IV.   PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.   Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. §2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.   Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not

"fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

-10-

### C. Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

> (1)  whether the petitioner failed to comply with an applicable state procedural rule;

> (2)  whether the state courts actually enforced the state procedural sanction;

> (3)  whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

> (4)  if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and

-11-

regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

> Simply stated, a federal court may review federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

-12-

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

## V.    STANDARD OF REVIEW

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28  U.S.C. § 2254 on January 11, 2012, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue

-13-

the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.   Decisions of lower federal courts may not be considered.

B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.   The state court decision may be overturned only if:

1.   It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.   the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.   'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.   the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.   Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.   Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules

-14-

of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, __U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).

The United States Supreme Court has observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI. ANALYSIS

Respondent contends that Petitioner is procedurally barred from asserting his constitutional challenge to the trial court's failure to instruct the jury on involuntary manslaughter in Ground Two, because the Ninth District declined to consider that claim on direct appeal, due to Petitioner failure to provide any argument in his brief. Respondent further contends that Ground Three, to the extent

that it is predicated upon a manifest weight of the evidence argument, is non-cognizable on habeas review.  Respondent asserts that Grounds Four is procedurally barred based upon Plaintiff's failure to appeal his App. R. 26(B) application to the Ohio Supreme Court.  Finally, Respondent argues that Petitioner's claims do not have merit.

### A.    Grounds One and Two

GROUND ONE: IN THIS CASE, MR. LITTLE ESTABLISHED THE THREE ELEMENTS REQUIRED BY ROBBINS. THE EVIDENCE SHOWED THAT MR. LITTLE ENTERED THE RESTAURANT AND SHOT MR. TURNER ONE TIME IN THE SHOULDER. MR. LITTLE THEN FLED THE RESTAURANT. AT THAT POINT THE "AFFRAY" STARTED BY MR. LITTLE WAS OVER. MR. LITTLE COULD HAVE STAYED IN THE RESTAURANT AND ENGAGED MR. TURNER IN FURTHER BATTLE. BUT HE LEFT THE RESTAURANT, AND LEFT MR. TURNER INSIDE THE RESTAURANT WITH A NON-FATAL WOUND TO HIS SHOULDER. MR. TURNER LEFT THE RESTAURANT AND ATTACKED MR. LITTLE AS HE WAS GOING FOR HIS CAR. MR. LITTLE TESTIFIED THAT WHEN HE EXITED, HE SAW TURNER WAS SIX FEET AWAY FROM HIM, HE PLEADED WITH MR. TURNER NOT TO HURT HIM. MR. TURNER ATTACKED MR. LITTLE BY GRABBING HIM AND PLACING HIM IN A HEADLOCK. THE GUN MR. LITTLE HAD FELL OUT OF HIS POCKET. AT THAT POINT, MR. LITTLE BEGAN TO FEAR FOR HIS LIFE BECAUSE HE WAS DEFENSELESS AGAINST A POSSIBLE TWO PEOPLE. MR. LITTLE TESTIFIED THAT HE SAW MR. TURNER PULL A GUN OUT OF HIS POCKET. LITTLE WAS ABLE TO KNOCK THE GUN OUT OF TURNER'S HAND. AS HE DID SO, MR. TURNER PICKED MR. LITTLE'S GUN UP AND TRIED FIRING AT MR. LITTLE, SIMULTANEOUSLY MR. LITTLE PICKED UP MR. TURNER'S GUN AND FIRED SIMULTANEOUSLY BUT FIRED TWICE IN SELF-DEFENSE. THE EVIDENCE ESTABLISHED TWO SEPARATE INCIDENTS. THE FIRST TOOK PLACE INSIDE THE RESTAURANT AND INVOLVED MR. LITTLE COMMITTING FELONIOUS ASSAULT ON MR. TURNER. MR. LITTLE CANNOT, AND DOES NOT, CLAIM SELF-DEFENSE AS TO THAT INCIDENT. IN THE PARKING LOT, MR. LITTLE WAS ATTACKED BY A MAN WIELDING A DEADLY WEAPON. MR. LITTLE WAS UNARMED AND COULD NOT RETREAT BECAUSE MR. TURNER HELD HIM IN A HEADLOCK WITH EXCRUCIATING FORCE. MR. LITTLE'S ACTIONS IN THE PARKING LOT WAS DONE NONETHELESS IN SELF-DEFENSE. AND BY THE TRIAL COURT REFUSING TO INSTRUCT THE JURY ON SELF-DEFENSE DEPRIVED LITTLE OF HIS LIFE AND LIBERTY BY SENTENCING HIM TO A LIFE SENTENCE ACCORDING TO THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

GROUND TWO: MR. LITTLE TESTIFIED THAT MR. TURNER VIOLENTLY ATTACKED HIM APPROXIMATELY ONE YEAR PRIOR TO THIS INCIDENT IN QUESTION. DETECTIVE TESTIFIED MR. TURNER WAS KNOWN FOR GOING AROUND THE CITY DUCT TAPING PEOPLE FOR MONEY. LITTLE BECAME A VICTIM OF TURNERS CRIME SPREE. MR. LITTLE TESTIFIED HE SHOT TURNER TO HARM HIM, "AND LET HIM FEEL WHAT I FELT FOR THE PAST YEAR." LITTLE'S TESTIMONY ESTABLISHED HE WAS SUBJECTIVELY UNDER THE INFLUENCE OF A SUDDEN FIT OF RAGE WHEN HE SAW MR. TURNER AT THE RESTAURANT, AFTER HARMING TURNER IN THE RESTAURANT MR. LITTLE HAD NO MORE INTENTIONS

BUT TO LEAVE. TURNER ATTACKED LITTLE OUTSIDE THE RESTAURANT CREATING AN OFFENSE OF VIOLENCE THAT HE HIMSELF PROVOKED. LITTLE PRODUCED THIS EVIDENCE, THE STATE FAILED TO PRODUCE EVIDENCE DISPUTING THIS FACT. THE TRIAL COURT DENIED LITTLE'S EQUAL PROTECTION OF THE LAWS BY REFUSING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES OF VOLUNTARY MANSLAUGHTER AND INVOLUNTARY MANSLAUGHTER ACCORDING TO THE FOURTEENTH AMENDMENT SECTION 1 OF THE UNITED STATES CONSTITUTION.

Petitioner contends that the trial court violated his constitutional right to due process and equal protection when it declined to give a jury instructions on self-defense, voluntary and involuntary manslaughter. The Ninth District provided the following analysis of the constitutional claims raised in Grounds One and Two:

{¶ 22} In his first and second assignments of error, Little argues that the trial court erred by refusing to instruct the jury on self-defense as well as the offenses of voluntary and involuntary manslaughter. We disagree.

"This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case. A trial court's failure to give a proposed jury instruction is only reversible error if the defendant demonstrates that the trial court abused its discretion, and that the defendant was prejudiced by the court's refusal to give the proposed instruction." (Internal citations and quotations omitted.) *State v. Sanders*, 9th Dist. No. 24654, 2009-Ohio-5537, at ¶45.

An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

Self–Defense

{¶ 23} Self-defense is an affirmative defense, which a defendant must prove by a preponderance of the evidence. *State v. Gates*, 9th Dist. No. 24941, 2010-Ohio-2994, at ¶ 7. "[A] trial court need only instruct the jury on self-defense if the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of such issue." (Internal quotations and citations omitted.) *State v. Hatfield*, 9th Dist. No. 23716, 2008-Ohio-2431, at ¶ 8.

"In general, to establish self-defense, including self-defense involving deadly force, the defendant must prove that: '(1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid the danger.' " *Gates* at ¶ 7, quoting *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶ 4.

"The failure of proof on any one of these elements negates the assertion of self-defense." *State v. Howe* (July 25, 2001), 9th Dist. No. 00CA007732, at *2.

-17-

{¶ 24} By his own testimony, Little admitted that he entered McDonald's for the purpose of shooting Turner. He argues that once he fired a non-fatal shot, however, the affray ended and he retreated, in good faith, by leaving the restaurant. Little testified that he "pleaded with [ ] Turner not to hurt him" because after Turner chased him out to the parking lot Turner put him in a headlock, took his gun, and pointed it at him. Little claims that he only shot Turner because he was "defenseless" and Turner was going to shoot him.

{¶ 25} The other evidence presented at trial does not support Little's version of the events. Apart from the fact that Little initially told the police that he was not at McDonald's at all and then that he was not the person who shot Turner in the parking lot, the medical evidence alone contradicts Little's explanation of the events. Doctor Matus testified that all of the bullets he removed from Turner's body were fired at a downward angle, meaning that the shooter had a higher vantage point and did not fire while facing Turner head on. Doctor Matus also testified that because Turner's back muscles were severed as a result of the first gunshot, it would have been difficult for him to even raise his arms at that point. Further, the evidence showed that the .380 caliber pistol Little initially used to shoot Turner contained a misfired bullet. Thus, the court could have rejected Little's argument that he retreated in good faith after one shot and determined that Little only retreated because his pistol would not fire again.

{¶ 26} Little failed to present sufficient evidence that he did not create the situation giving rise to the affray or that he had a bona fide belief that he was in "imminent danger of death or great bodily harm." *Gates* at ¶ 7. Accord *Hatfield* at ¶ 9. Consequently, the trial court did not err by refusing to instruct the jury on self-defense. See *Howe*, at *2.

Voluntary & Involuntary Manslaughter

{¶ 27} "[A] defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." *State v. Shane* (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272. A person commits voluntary manslaughter when he knowingly causes the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force[.]" R.C. 2903.03(A). A trial court need not give a voluntary manslaughter instruction if the evidence shows that a defendant had sufficient time to "cool down" after being provoked. *State v. Huertas* (1990), 51 Ohio St.3d 22, 32, 553 N.E.2d 1058.

{¶ 28} Little argues that the trial court erred by refusing to instruct the jury on voluntary manslaughter because Turner's actions against him constituted adequate provocation and he subjectively felt provoked when he saw Turner at McDonald's. Voluntary manslaughter also requires, however, proof that a person did not undergo an objectively reasonable cooling off period before causing the death of the victim. *Shane*, 63 Ohio St.3d at fn.1, quoting 2 LaFave & Scott, Substantive Criminal Law (1986) 255, Section 7.10 (providing that voluntary manslaughter requires a defendant to show that "[a] reasonable man * * * would not have cooled off in the interval of time between the provocation and the delivery of the fatal blow"). The incident Little cited as provocation took place in July 2006, one year before Little shot Turner to death. Even assuming Little proved adequate provocation, Little has not offered this Court any argument with regard to why one year would not be a sufficient cooling off period. See App.R. 16(A)(7). See, also, *Huertas*, 51 Ohio St.3d at 31-32, 553 N.E.2d

-18-

1058 (concluding that instruction was not warranted because evidence demonstrated a sufficient cooling off period). Thus, Little has not shown that the evidence warranted a voluntary manslaughter instruction. As such, the trial court did not abuse its discretion by refusing to instruct the jury on voluntary manslaughter. See *Shane*, 63 Ohio St.3d at 632, 590 N.E.2d 272.

{¶ 29} Little's captioned assignment of error also assigns error to the trial court as a result of the court's failure to instruct the jury on involuntary manslaughter. Yet, Little's argument fails to set forth or analyze any of the elements of involuntary manslaughter, as contained in R.C. 2903.04, in light of the evidence introduced at trial. See App.R. 16(A)(7). As this Court has repeatedly held, "[i]f an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone* (May 6, 1998), 9th Dist. No. 18349, at *8. Thus, we will not engage in an analysis on Little's behalf with regard to the involuntary manslaughter instruction.

{¶ 30} Little's arguments that the trial court failed to instruct the jury on self-defense and voluntary and involuntary manslaughter lack merit. Little's first and second assignments of error are overruled.

*Little*, 2011 WL 597994, *6-8.

Respondent argues that Petitioner is procedurally barred from asserting Ground Two, to the extent that it is predicated upon the trial court's failure to instruct the jury on involuntary manslaughter. Procedural default occurs when the petitioner fails to fairly present his federal constitutional claim to the state courts in the manner required by state law. *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Ernie v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). The burden is on the prisoner to prove exhaustion. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994). The failure to present a claim constitutes a waiver of the argument, unless the petitioner can present cause for the default and actual prejudice from the constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

"Fairly presenting" a claim requires more than just mentioning it in passing. Rather, a petitioner must present both the factual and legal basis for his claims to the state court. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir.2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir.2003)). Even if there were "variations in the legal theory or factual allegations urged in [the claim's] support," the petitioner must have presented state courts with a claim similar enough "that the ultimate question would have been the same." *Jells v. Mitchell*, 538 F.3d 478, 504 (6th Cir.2008). Neither a "somewhat similar state-law claim," *Anderson v. Harless*, 459 U.S. 4, 6, (1982),

nor a general allegation of a fair trial or due-process violation is enough. *McMeans*, supra, at 681. A claim must be presented to the state courts as a federal constitutional issue. See *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir.1984).

The first prong of the *Maupin* analysis for procedural default is met here as Rule 12(A)(2) of the Ohio Rules of Appellate Procedure provides that the appellate court can disregard an assignment of error if the party raising it fails to identify in the record the error upon which the assignment of error is based or fails to argue the assignment of error separately in the brief as required by Rule 16(A) of the Ohio Rules of Appellate Procedure. Ohio App. R. 12(A)(2). Rule 16(A) of the Ohio Rules of Appellate Procedure addresses the content of the appellant's brief, which must include: "(7) [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary." Ohio App. R. 16(A)(7). Petitioner failed to comply with the appellate rule because he did not present any argument to support his contention and failed to cite to supporting authority.

The Ninth District actually enforced this rule by disregarding Petitioner's assignment of error for his failure to follow the rule. Thus, the second prong of *Maupin* is met. Third, the application of this rule has been determined to be an adequate and independent state ground upon which to foreclose relief since it "did not require review of any merits and it had a discernable standard of application." *Banks v. Bradshaw*, No. 1:05CV1141, 2008 WL 4356955, at *11 (N.D.Ohio Sept.17, 2008), unpublished (Ohio Appellate Rule 12(A)(2) deemed adequate and independent state ground under Maupin ). And finally, Petitioner fails to meet the fourth prong of *Maupin* because he fails to establish cause to excuse his default or to otherwise establish his actual innocence.  As a consequence, the undersigned recommends that the Court find that Ground Two, to the extent that it is predicated upon the trial court's failure to instruct the jury on involuntary manslaughter is procedurally barred.

Moreover, both the first and second assignments of error were raised and analyzed purely as matters of state law.  Petitioner has not asserted any cause for his failure to raise his constitutional

claims in his direct appeal. Accordingly, the undersigned recommends that the Court find that the claim asserted in Grounds One and Two in their entirety are procedurally defaulted.

Finally, in order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair. *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), quoting *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

The category of infractions that violate fundamental fairness is very narrow. *Byrd v. Collins*, 209 F.3d 486 (6th Cir.2000), citing *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). Here, the jury instructions at issue, that is, self defense and voluntary and involuntary manslaughter, were not warranted based upon the facts as summarized by the Ninth District Court of Appeals. Accordingly, the undersigned recommends that the Court find that Grounds One and Two are procedurally barred, or in the alternative, are meritless.

## B.    Ground Three

GROUND THREE: THE VERDICTS ARE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE THEY VIOLATE THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO. THE FACT RAISED BY THE STATE DID NOT APPEAR PROBABLE, BECAUSE THE CONVICTION ON THE AGGRAVATED MURDER CHARGES AND THE OTHER TWO MURDER CHARGES RESTED ONLY ON A ERRONEOUS JURY INSTRUCTION GIVEN BY THE TRIAL JUDGE. THE ELEMENTS PRESENTED BY THE STATE WAS NOT SUPPORTED BY THERE (THEIR) WITNESSES TESTIMONY. MAJORITY OF THE STATES WITNESSES TESTIMONY SUPPORTED THE LITTLE'S ARGUMENTS, OF A LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER AND INVOLUNTARY MANSLAUGHTER. THE MANAGER OF MCDONALD'S MRS. TRACI NELSON TESTIFIED THAT SHE SAW TWO PEOPLE THROWING PUNCHES WHICH SUPPORTS THIS ISSUE, THERE WAS FEAR INVOLVED IN THIS INCIDENT. THE TRIAL COURT COMMITTED PLAIN ERROR VIOLATING LITTLE'S CONSTITUTIONAL RIGHTS DEPRIVING HIM OF LIFE AND LIBERTY WITH THE MIS-CARRIAGE OF JUSTICE WITH THE CONVICTION OF THE MURDER CHARGES. ACCORDING TO THE 5TH 6TH AND 14TH AMENDMENTS.

Petitioner contends that the evidence adduced at his trial was insufficient to support his convictions, and he further contends that the verdicts were against the manifest weight of the evidence.  The Ninth District provided the following analysis of the claims raised in Ground Three:

Sufficiency

{¶ 9} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 274, 574 N.E.2d 492. Furthermore:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.

"In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶ 10} R.C. 2903.01(A) provides, in relevant part, that "[n]o person shall purposely, and with prior calculation and design, cause the death of another [.]" "[T]he phrase 'prior calculation and design' * * * indicate[s] studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim." *State v. Patel*, 9th Dist. No. 24030, 2008-Ohio-4693, at ¶ 33, quoting *State v. Taylor* (1997), 78 Ohio St.3d 15, 19, 676 N.E.2d 82.

"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

The foregoing offense constitutes aggravated murder. R.C. 2903.01(F).

{¶ 11} R.C. 2903.02 defines the offense of murder. Specifically, R.C. 2903.02(A) prohibits any person from "purposely caus[ing] the death of another." Similarly, R.C. 2903.02(B) provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]" See, also, R.C. 2901.01(A)(9) (defining the phrase "offense of violence").

{¶ 12} Doctor Paul Matus, the Lorain County Coroner, testified that he removed three bullets from Turner's body when he performed an autopsy. Before his death, Turner suffered gunshot wounds to the back, abdomen, and neck. While the back wound resulted from a .380 caliber bullet, the remaining two wounds stemmed from .22 caliber rounds. Doctor Matus described the gunshot to Turner's back as a near contact wound due to the presence of gun powder residue, meaning that the shooter held the gun extremely close to Turner before firing. Doctor Matus described the bullet as having severed Turner's back muscles and opined that it would have been difficult for Turner to raise his arms after receiving that wound. Even so, Doctor

Matus described Turner's back and abdomen wounds as non-fatal injuries and concluded that Turner died as a result of blood loss when the gunshot to his neck nicked a pulmonary artery. According to Doctor Matus, the shooter fired the gunshot to Turner's neck at a distance because there was a lack of any gun powder or stippling around that injury. Doctor Matus also specified that all of Turner's wounds exhibited a downward path trajectory, meaning that the shooter fired at a downward angle. Doctor Matus testified that a downward path trajectory would not be present if both the shooter and the victim were standing upright.

{¶ 13} Sheila Lowe testified that she went to the McDonald's drive-thru on the night of the shooting with her boyfriend. Lowe recalled seeing a man in a hooded sweatshirt sitting on the curb before the car pulled around the drive-thru. According to Lowe, the man's sweatshirt had lettering on it that appeared to spell out "Levi." As a McDonald's employee handed Lowe and her boyfriend their purchase, Lowe heard a loud noise. Lowe learned there had been a shooting on the other side of the restaurant and used her cell phone to call 911.

{¶ 14} Julia Thomas, the McDonald's shift manager on the night in question, testified that she saw a man wearing a hooded sweatshirt and long jean shorts approach the McDonald's Playland area where two other men were sitting at a table. Thomas told the man the Playland area was closed, but he ignored her and entered the area. A few seconds later, Thomas heard a "boom" and saw the same man with a gun in his hand. Thomas then saw the man exit the restaurant and head toward the parking lot next door. The two other men who had been in the Playland area then also ran outside, and Thomas soon heard another gunshot. She then saw the man in the hooded sweatshirt run toward the Blockbuster Video store behind McDonald's. Another McDonald's employee, Traci Nelson, also witnessed the incident and testified that she saw two men fighting in the parking lot before she heard two gunshots. After the gunshots, Nelson saw one man fall in the parking lot and the other man run towards the Blockbuster Video store.

{¶ 15} Sergeant Mark McCoy testified that he found a hooded sweatshirt in Blockbuster Video's dumpster. The sweatshirt had lettering on it that spelled out "Lewis" and subsequently tested positive for the presence of gun powder residue. Detective Ralph Gonzalez also canvassed the area where Little was arrested after the shooting and found two pistols, one of which was a .22 caliber and the other a .380 caliber, hidden in a bush behind a residence. Although the .22 caliber pistol was empty, the .380 pistol was loaded. According to Detective Gonzalez, the .380 pistol had a chambered round that appeared to have been misfired, as it was still intact in the chamber but had a firing pin impression on its bottom. Michael Roberts, a forensic scientist with the Bureau of Criminal Identification and Investigation ("BCI"), examined the firearms and confirmed that the chambered bullet was consistent with a misfire.

{¶ 16} In the course of the investigation, the police also uncovered a car parked at DiFrancisco's Garage, a business directly across the street from McDonald's. Detective Gonzalez testified that DiFrancisco's owner asked him about having the car towed because it had been there overnight. The police were able to trace the car to Little's girlfriend and found a piece of paper signed by Little in the car as well as some uneaten food from McDonald's. The police also discovered that the cell phone Little had with him at the time of his arrest was Turner's cell phone. Further, a BCI forensic analyst testified that she examined the fingernail scrapings taken from Turner during his autopsy and that Little could not be excluded as the source of DNA found in the scraping samples. Detective Mark Carpentiere identified both Little and Turner

-23-

as individuals involved in the drug trade in the Lorain area. As previously noted, Little had a bag of crack cocaine on his person when officers arrested him.

{¶ 17} Little admits that he entered McDonald's intending to shoot Turner, but argues that he did not intend to kill him. Viewing the evidence in a light most favorable to the State, we must conclude that the record contains sufficient evidence to support Little's aggravated murder and murder verdicts. A rationale juror could have concluded that Little decided to kill Turner at some point before he entered McDonald's. See *Taylor*, 78 Ohio St.3d at 20, 676 N.E.2d 82 (rejecting a bright-line approach for prior calculation and design and noting that "each case turns on the particular facts and evidence presented at trial"). The police located Little's vehicle directly across the street from McDonald's where Turner could have been clearly visible through the Playland area's all-glass exterior. The car contained McDonald's food, which is indicative of the fact that Little had gone to the restaurant first before deciding to return. Additionally, one witness saw Little sitting on the curb of the McDonald's shortly before he entered it and shot Turner. Although Turner only sustained one, non-fatal shot to his back before fleeing McDonald's, the evidence showed that the .380 caliber pistol used to shoot him contained a chambered, misfired bullet. Accordingly, the jury could have concluded that Little did not kill Turner with the .380 pistol in McDonald's simply because the pistol misfired the second time.

{¶ 18} Doctor Matus testified that all of the bullets he recovered from Turner's body traveled at downward trajectories and that the fatal shot to Turner's neck was fired at a distant enough range that it did not leave evidence of powder or stippling. Moreover, he testified that it would have been difficult for Turner to raise his arms after having sustained the shot to his back. While it is unclear who initially possessed the .22 caliber pistol used to kill Turner, the jury could have concluded that Little either possessed or gained possession of the pistol at some point and used it to intentionally kill Turner before taking his cell phone, and possibly crack cocaine, from him. Little's argument that his aggravated murder and murder convictions are based on insufficient evidence lacks merit.

Manifest Weight

{¶ 19} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; see, also, Otten, 33 Ohio App.3d at 340, 515 N.E.2d 1009.

{¶ 20} Little argues that his aggravated murder and murder verdicts are against the manifest weight of the evidence because he did not intend to kill Turner. Little

-24-

testified in his own defense and claimed that: (1) he only shot Turner because he wanted to cause him pain, not kill him; (2) he tried to leave the scene after the first shot, but Turner followed and attacked him in the parking lot; and (3) he only shot Turner because Turner had a gun and was raising his arm to shoot. On cross-examination, however, Little admitted that he repeatedly lied to the police during their investigation. Little first told the police he was not at the crime scene at all. When shown a video recording from McDonald's on which he appeared, Little admitted he was at the restaurant, but said that a third party must have killed Turner in the parking lot after he, Little, successfully ran away. Little then later changed his version of the events again and admitted that he shot Turner, but said it was in self-defense. Moreover, Little only admitted to shooting Turner once with the .22 caliber pistol. He claimed that when he shot, the gun must have dispensed two bullets. Little also repeatedly lied about the location of the firearms that he hid, admitting that he twice took the police to the wrong location to look for the firearms in an attempt to mislead them. Little also could not explain why, if he was actually attempting to flee after he first shot Turner, he ran toward the parking lot adjacent to McDonald's instead of across the street where he had parked his car. Finally, Little's claim that Turner was facing him head on when Little shot him was contrary to the medical evidence introduced by Doctor Matus.

{¶ 21} Given the foregoing, we cannot conclude that this is the exceptional case where the evidence weighs heavily against the verdicts entered. See *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury simply chose to believe the State's version of the events. In light of the evidence presented and the fact that Little repeatedly lied to the police during the course of their investigation, it was not unreasonable for the jury to reach that conclusion. Little's argument that his aggravated murder and murder verdicts are against the manifest weight of the evidence lacks merit. Little's third assignment of error is overruled.

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reaching its determination as to the sufficiency of the evidence, a court may not substitute its determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. See *id.*; see also *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.1983).

To determine whether the state court unreasonably applied the sufficiency-of-the-evidence standard of *Jackson v. Virginia*, * * * "[f]irst, [the Court] must ask whether the evidence itself was sufficient to convict.... [and] [t]he inquiry ends if [the Court] determines that there was sufficient evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir.2010) (citation omitted). Second,

"[i]f [the Court] find[s] that the evidence is insufficient to convict, [the Court] must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt." *Id.* (citation omitted). The result of this double deference is that "habeas corpus relief is appropriate based on insufficient evidence only where we find, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007). On habeas review, federal courts must assume that the jury "resolve[d] conflicts in the testimony," "weigh[ed] the evidence," and drew "reasonable inferences" therefrom. *Jackson*, supra, at 319. A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.

Based upon the factual findings set forth by the Ninth District Court of Appeals, the undersigned recommends that the Court find that the state appellate court applied the correct Supreme Court standard to Petitioner's sufficiency of the evidence claim, and that the Ninth District's application of *Jackson,* supra, as adopted and applied by the Ohio Supreme Court in *Jenks*, supra, was reasonable. Finally, to the extent that Ground Three is predicated upon Petitioner's claim that his convictions are against the manifest weight of the evidence, such a claim is not cognizable on federal habeas review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman–Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D.Ohio Oct. 5, 2006).

Accordingly, the undersigned recommends that the Court find that Ground Three, to the extent that it is predicated upon a manifest weight of the evidence claim, is non-cognizable, and to the extent it is predicated upon a challenge to the sufficiency of the evidence adduced at trial, has no merit.

### C.  Ground Four

GROUND FOUR: THE TRIAL COURT DEPRIVED LITTLE OF A FAIR TRIAL IN VIOLATION FO THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION DURING THE COURSE OF TRIAL, IN THE WAY THE JUDGE ANSWERED THE JURY'S QUESTION DURING DELIBERATION IT WAS DEFINITELY UNREASONABLE THE WAY HE SAID IT, AND THE WAY HE VIOLATED LITTLE'S DUE PROCESS RIGHT TO A FAIR TRIAL BY

-26-

REDUCING THE INSTRUCTIONS TO HANDWRITING. DURING DELIBERATION THE JURY ASKED THE JUDGE A QUESTION ON A WRITTEN PIECE OF PAPER. THEY ASKED, "HOW DO WE DECIDE THE AGGRAVATED MURDER, AND THE MURDER CHARGES." THEN THE JUDGE ANSWERED BY WRITING ON A PIECE OF PAPER WHILE SENDING IT BACK TO THE JURY JUDGE: "YOU HAVE ALL THE EVIDENCE, YOU DECIDE." NOW THESE FACTS THAT SUPPORT MY ISSUE ARE TRUE AND I WILL ALSO LEAVE THIS THOUGHT THE CHOICE OF WORDS THE JUDGE USED WAS UNREASONABLE. THE JURY COULD HAVE TAKEN THE ATTITUDE IN HIS ANSWER AS "IT ISN'T HARD TO FIGURE OUT YOU DECIDE." EVEN IF THAT DOESN'T RAISE ENOUGH FOR A DUE PROCESS VIOLATION TO A FAIR TRIAL, BY REDUCING THE INSTRUCTIONS TO HANDWRITING DOES VIOLATE LITTLE'S RIGHT TO A FAIR TRIAL.

Petitioner did not raise the alleged constitutional violation in Ground Four in his direct appeal, and as a consequence, Ground Four is procedurally barred. However, Petitioner did raise his challenge to the trial court's response to the jury question in his App. R. 26(B) application before the Ninth District. Of course, ineffective assistance of counsel claims can serve as cause to overcome procedural default, see *Smith v. Ohio Dept. of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir.2006) (citing *Deitz v. Money*, 391 F.3d 804, 809 (6th Cir.2004)), but an ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Because Petitioner failed to appeal the Ninth District Court of Appeals's decision on his App. R. 26(B) application to the Ohio Supreme Court, the constitutional issue raised in Ground Four is procedurally barred.

"A claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Deitz*, 391 F.3d at 809 (citing *Edwards*, 529 U.S. at 452). Claims of ineffective assistance of appellate counsel must be raised in an application for reopening before the Ohio Court of Appeals. See *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B). Such a motion must be filed in the court of appeals within ninety days of the appellate judgment. *State v. Lamar*, 102 Ohio St.3d 467, 468, 812 N.E.2d 970 (2004) (*per curiam*), cert. denied, 543 U.S. 1168, 125 S.Ct. 1349, 161 L.Ed.2d 144 (2005); *State v. Reddick*, 72 Ohio St.3d 88, 90, 647 N.E.2d 784, 786 (1995) (*per curiam*). However, Petitioner did not appeal the issue raised in Ground Four to the Ohio Supreme Court for timely review. Thus, under state law, the claim was waived, and is considered procedurally defaulted

-27-

in habeas. See *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994) (highest court in state must be given full and fair opportunity to rule on claims).

Furthermore, the Supreme Court of Ohio will not entertain a delayed appeal of a Rule 26(B) application. See *Scurlock v. Hurley*, No. 2:04-CV-687, 2005 WL 1189831, at *4 (S.D.Ohio May 19, 2005); Ohio S.Ct.Prac.R. II, Sect. 2(A)(4)(c). The Ohio Supreme Court's denial of a motion for leave to file a delayed appeal is a procedural ruling sufficient to bar habeas review. *Smith v. Ohio Dept. of Rehab. and Corr.*, 463 F.3d 426, 431-432 (6th Cir.2006) (appellant failed to comply with Ohio Supreme Court Rules by not filing appeal within period set forth by those rules); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir.2004) (*per curiam*), cert. denied, 543 U.S. 989, 125 S.Ct. 506, 160 L.Ed.2d 375 (2004); *Scurlock*, 2005 WL 1189831, at *4. Such a procedural default is "an adequate and independent ground on which the state can rely to foreclose review of his federal constitutional claims." *Shabazz v. Ohio*, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998) (TABLE, text in WESTLAW); *Scurlock*, 2005 WL 1189831, at *4.

When a petitioner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, habeas review is barred unless the petitioner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Bonilla*, 370 F.3d at 497. "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule. *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488). Here, Petitioner has not demonstrated cause for his failure to file a timely appeal of the denial of his Rule 26(B) application to the Ohio Supreme Court, and, as a consequence, the undersigned recommends that Ground Four is procedurally barred.

However, even assuming *arguendo* that Ground Four is properly before the Court, Petitioner cannot show that his counsel was ineffective. In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984). To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for

-28-

counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Court scrutiny of defense counsel review must be "highly deferential." *Id*. at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief.  *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990).  "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

As stated previously, in order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair.  *Henderson, supra.*  The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle, supra.*

The jury provided the following questions to the trial court during their deliberations: "Aggravated murder charge did it stem from the shooting that actually took place inside McDonalds [sic] The three murder charges all stem from him being killed outside in parking lot – right?  Not different shots in and out of McDonalds [sic]?"  ECF Dkt. #10-1 at 1.  The trial court responded, "You have all the information needed to decide the aggravated murder charge.  Please refer to the Jury Instructions as it pertains to that charge.  You have all the information needed to decide the murder charges.  Please refer to the Jury Instructions as it pertains to those charges." *Id.* at 2.

-29-

Here, the trial court's response to the jury question was not constitutionally infirm.  Petitioner argues that the trial court's response to the jury question could be misconstrued to suggest his guilt.  However, Petitioner's interpretation of the trial court's response is without basis.  In fact, the Ninth District reached a similar conclusion, characterizing the trial court's response to the jury question as neither "misleading or remotely prejudicial."  ECF Dkt. #8-1 at 256.  As a consequence, Petitioner cannot demonstrate error on the part of his trial counsel nor prejudice that would have otherwise resulted in an acquittal.  Accordingly, the undersigned recommends that the Court find that Ground Four is procedurally barred, or, in the alternative, that Ground Four has no merit.

### D.    Ground Five

GROUND FIVE: APPELLATE COUNSEL FAILED TO RAISE PROSECUTOR MISCONDUCT, THIS ISSUE WAS RAISED AS INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL. IT WAS GREAT REASON TO RAISE THIS ISSUE. LITTLE FILED A MOTION FOR DISCLOSURE OF EVIDENCE FAVORABLE TO THE DEFENDANT WHICH WAS FILED JUNE 18th 2009. THIS MOTION WAS EITHER DENIED OR NEVER HEARD. THIS EVIDENCE WOULD OF HELPED LITTLE'S DEFENSE AND HIS APPELLATE APPEAL ALSO, SHOWING THIS WAS NO AGGRAVATED MURDER OR NO MURDER, BUT IF ANYTHING A LESSER INCLUDED OFFENSE OF THESE CHARGES. THE PROSECUTOR PRESENTED EVIDENCE OF A MCDONALD'S [SIC] THAT SAT INSIDE LITTLE'S CAR THIS EVIDENCE WAS NEVER GIVEN IN A DISCOVERY PACKET, THIS EVIDENCE SHOULD OF FOLLOWED A RECEIPT PROVING THE TIME FRAME ELIMINATING AGGRAVATED MURDER AND MURDER. THIS ALSO VIOLATES LITTLE'S RIGHT TO A FAIR TRIAL ACCORDING TO THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.

The issue raised in Ground Five is raised for the first time in habeas petition before this Court.  In his traverse, Petitioner does not include Ground Five in his "Statement of Issues," ECF Dkt. #10 at 6, nor does he provide any argument in the traverse in support of Ground Five.  As a consequence, it appears that Petitioner has abandoned his claim.

Even assuming that Petitioner has not abandoned Ground Five, Ground Five is procedurally defaulted.  As stated previously, to satisfy the exhaustion requirement, a claim  must be "fairly presented" to the state courts, meaning that the petitioner must have asserted both the factual and legal bases for the claims in the state courts. See *McMeans, supra*, at 681. The burden is on the prisoner to prove exhaustion. *Rust* at 160.

-30-

Procedural default occurs when the petitioner fails to fairly present his federal constitutional claim to the state courts in the manner required by state law. *Wainwright* at 86–87. The failure to present a claim constitutes a waiver of the argument, unless the petitioner can present cause for the default and actual prejudice from the constitutional error. *Murray* at 485. Here, Petitioner raised the claim set forth in Ground Five in his memorandum in support of jurisdiction before the Ohio Supreme Court for the first time in his direct appeal.

"District courts within the Sixth Circuit 'have consistently found Ohio's procedural rule requiring claims to be presented in the lower appellate court prior to being presented to the Ohio Supreme Court to be an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.'" *Smith v. Warden,* 2010 WL 3075166, at *14, quoting *Shank v. Mitchell*, No. 2:00-CV-17, 2008 WL 4449567, at *43 (S.D.Ohio Sept.30, 2008) (Marbley, J.) (citations omitted).

Issues not fairly presented to the state courts cannot be considered in this Court on federal habeas review. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir.2001). Furthermore, Petitioner has not offered any cause for his failure to raise the issue in Ground Five before the Ninth District Court of Appeals in the state court proceedings. As a consequence, Ground Five is procedurally barred.

Even assuming that Ground Five is not procedurally barred, Petitioner's argument in Ground Five is confounding, to the extent that he appears to have omitted the operative word in his claim. Based upon the ineffective assistance of counsel claim raised before the Ohio Supreme Court, Ground Five appears to be predicated upon the state's failure to furnish the McDonald's bag found in his automobile. He appears to argue that the bag was never furnished by the government pursuant to its obligation under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

To establish a violation of the rule announced in *Brady*, Petitioner must show that (1) the prosecution suppressed evidence, either willfully or inadvertently; (2) the evidence is favorable to the accused, either because it is exculpatory or because it is impeaching; and (3) the suppressed evidence is material to guilt or punishment. *Moore v. Illinois*, 408 U.S. 786, 794–95, 92 S.Ct. 2562,

33 L.Ed.2d 706 (1972); see also *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir.2000).

The rule encompasses evidence "known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). In order to comply with *Brady*, therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Id.* at 437, 115 S.Ct. 1555, 131 L.Ed.2d 490.

Evidence is "material" within the meaning of *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); see also *Strickler*, 527 U.S. at 280 (citing *Kyles, supra*). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Bagley*, 473 U.S. at 682. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). This standard for determining materiality focuses on the defendant's guilt or innocence, rather than on the impact of the undisclosed evidence on the defendant's ability to prepare for trial. *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir.1991) (citing *Agurs*, 427 U.S. at 112 n. 20).

"The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles* at 434.  When determining whether the withheld information was material and therefore prejudicial, the court must consider it in light of the evidence available for trial that supports the petitioner's conviction.  See *Towns v. Smith*, 395 F.3d 251, 260 (6th Cir.2005); *Clinkscale v. Carter*, 375 F.3d 430, 445 (6th Cir.2004).

To meet *Brady* criteria the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.  *Strickler* v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

Here, Petitioner appears to argue that the McDonald's bag constitutes exculpatory evidence, however, it is not clear, nor has Petitioner offered any argument in support of his contention, that the bag constitutes *Brady* evidence.  For these reasons, the undersigned recommends that the Court conclude that Ground Five is procedurally defaulted, or in the alternative, that Ground Five has no merit.

## VII.  CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: May 21, 2013                                    */s/ George J. Limbert*_____
                                                       GEORGE J. LIMBERT
                                                       UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).